### UNITED STATES v. PALMER & PARKER CO.

(District Court, D. Massachusetts. November 6, 1923.)

#### No. 2172.

1. **Logs and logging** ⊂⊃10(2)—**Measurements by state officials may be shown to be erroneous.**

 Measurements of logs honestly made by the Department of Labor and Industries, under G. L. Mass. c. 96, may be shown to be erroneous, in view of the history of legislation.

2. **Logs and logging** ⊂⊃10(3)—**Measurements by state officials held erroneous.**

 In a libel to recover freight on logs, evidence *held* to show that a measurement of logs honestly made by the Department of Labor and Industries, pursuant to G. L. Mass. c. 96, was erroneous, and the correct measurement was that stated by private surveyors.

In Admiralty. Libel by the United States against the Palmer & Parker Company. Libel dismissed.

Lawrence Curtis, 2nd, Asst. U. S. Atty., of Boston, Mass.

T. R. Hawley, Gaston, Snow, Saltonstall & Hunt, and John W. Lowrance, all of Boston, Mass., for respondent.

LOWELL, District Judge. This was a libel in personam, brought by the United States against the defendants to recover freight on certain logs of mahogany which were carried on the steamer Alfalkey from certain ports in Nicaragua to Boston. The freight was to be at the rate of $18 per ton of 40 cubic feet. Two measurements of the logs were made, which will be more particularly referred to hereafter. The defendants paid the freight which was due according to the measurement of Messrs. Constantine & Co. The United States, however, sues for the sum of $2,490.55, which is the extra sum due according to the measurement made under the direction of the Department of Labor and Industries of the commonwealth of Massachusetts.

When the agent of the United States was notified of the approaching arrival of the Alfalkey, he communicated with the defendants and sug-

⊂⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

gested that the measurement be made under the direction of the state department. To this the defendant objected. The result was that two measurements were made—one for the United States by the lumber surveyors of the state department, and the other by Constantine & Co., who were employed for that purpose by the defendant. The return made by the official surveyors was 1,031 logs, comprising 61,654 cubic feet. The return by Constantine & Co. was 1,040 logs, comprising 56,275 cubic feet. The difference for which the libelants are claiming payment of freight was 5,379 cubic feet. Two surveyors were detailed by the proper official of the Department of Labor and Industries to make the survey of lumber, and two men also were employed by Constantine & Co. On the first day, when the stevedores were unloading the deck load of 136 logs, only one official surveyor was present, while at the same time two were present from Constantine & Co.

[1] The libelant contends that the result of the survey by the employees of the Department of Labor and Industries is entitled to the consideration of an official action of the commonwealth of Massachusetts, and can be impeached only if it is shown that it is fraudulently prepared. The libelees, on the other hand, contend that the result is not sacrosanct (I use their own apposite word), but that it can be attacked by showing that it was not correctly made out. In support of its contention the libelant cites the case of Moneyweight Scale Co. v. McBride, 199 Mass. 503, 85 N. E. 870. That case, however, is not an authority for his contention, as the statute which the court was considering was one where certain weighing devices were examined by the sealers of weights and measures of a city; the statute prescribing that they must be examined and approved before they were used for weighing articles. The court said, in the course of their opinion by Mr. Justice Loring, that the correctness of the scales was not before them.

"The decision of that question is committed by the statute to the sealers of weights and measures of the several cities and towns of the commonwealth. If a sealer of weights and measures in deciding that question should proceed on erroneous principles of law, his decision could be quashed on certiorari, and in some cases a writ of mandamus might issue directing him to take specific action. * * * But there is no jurisdiction in this court to take from the public officer selected by the act the duty of deciding the question committed to him for decision by the act."

The present statute differs very materially from the one under consideration in the case cited. The statute is now chapter 96 of the General Laws of Massachusetts. It is the last of a long series of statutes, the first of which was passed in colony times in 1710. That was a statute to prevent frauds in the measurement of boards, planks and timber which were sold by the measure. Timber and lumber was always measured by local surveyors until 1859, when for the first time (St. 1859, c. 224) a state official, called a "surveyor general," was appointed for the district of Boston and its vicinity. The territorial district of the official surveyor was not enlarged until the passage of the General Laws in 1920, the first indication of any larger district than that of Boston and vicinity being contained in chapter 477 of the Statutes of 1902, section 2 of which added to section 7 of chapter 60 of the Revised Laws the following:

"Any purchaser or seller of lumber or any person having a pecuniary inter-, est in any lumber shall have the right to call upon the surveyor general to survey any lumber within the commonwealth."

This is the first statute, also, where any one is mentioned except either the buyer or seller of lumber.

In the form in which the statute occurred in the General Statutes in 1860 an official survey was compulsory, and the sale of lumber without such survey was void. Prescott v. Battersby, 119 Mass. 285. This was changed by St. 1878, c. 65, § 2. See 1 Op. A. G. (Mass.) 177. After that a sale of lumber was valid, though no official survey had been made, as Mr. Attorney General Knowlton held, in the course of his opinion, that the surveyor general had no jurisdiction unless one of the parties to the sale called upon him for measurement. Op. cit. 179, We have seen, also, that not until 1902 did the statute apply to anybody excepting a buyer or seller of the lumber. It is clear, therefore, that the official survey in this case, though legal, is not given any peculiar sanction.

[2] The libelant, however, further says that at any rate the result of the official survey establishes a prima facie case in his favor. In this I agree with him, and if there were no other evidence in the case the survey would be binding upon the parties. The evidence has convinced me, however, that the survey of the department, while honestly made, was inaccurate. On the first day, when the deck load was being taken off the boat, fore and aft at the same time, by two different derricks, only one official surveyor was present. There was evidence that several logs were taken off the ship without being marked by this surveyor. This evidence is corroborated by the fact that the total number of logs measured by the department was 1,031, while the number found by the surveyors of Constantine & Co. was 1,040. The department surveyors did not measure the length of the log with as much care as the others. The surveyors of Constantine & Co. measured to within two inches, while the department surveyors estimated the length of any fraction of a foot under six inches. The method also of getting at the average diameter of the logs was different. The department surveyors got one diameter by the use of calipers. They took this measurement at what they judged was the middle of the log; sometimes they took two measurements, and divided the sum of these by two. Constantine & Co. took four diameter measures on all logs, two at each end, and divided the sum of these four measurements by four. Constantine & Co. got the cubic contents of the logs by the use of tables of figures. There is no evidence how the computation was made by the department surveyors.

It was proved to my satisfaction that the method used by Constantine & Co. was more accurate than that used by the department surveyors, and I find as a fact that the number of cubic tons of mahogany timber carried by the vessel was that stated by Constantine & Co. As the freight money due for this amount of logs has been paid, the libelees do not owe the libelants anything.

Libel dismissed.