[Civ. No. 16016.   Second Dist., Div. One.   Feb. 24, 1948.]

NORMAN I. FADEL, Respondent, v. VICTOR SLAYMAN et al., Appellants.

Henry O. Wackerbarth for Appellants.

Joseph T. Enright for Respondent.

DORAN, J.—The original complaint herein sought recovery of $4,000 as agreed compensation for contractors' services in the proposed construction of a fruit packing house at Lindsay, California. The then-named plaintiffs included Alfred N. Fadel and Job N. Fadel but at the commencement of the trial the court sustained defendant's objection to the introduction of evidence as to these plaintiffs. The complaint also sought a declaration of rights with reference to two contracts claimed to have been entered into, at defendant's request, with an attorney named Hal Hughes employed to obtain war priorities, and an architect named Peter Whitehill. The packing house was never constructed.

The trial court held that in making the contract the parties contemplated the obtaining of governmental priorities for materials and that since no such priorities were granted "both parties were then released from going further in execution of their agreement." By way of declaratory relief, however, the court found that respondent had, at appellants' request, entered into contracts with the above-mentioned attorney and architect and that "defendants are liable to said plaintiff in whatever sums the said plaintiff may by final

judgment be held liable to said Hughes (attorney) and White-hall (architect)." To prevent a multiplicity of actions, the trial court also permitted an amendment to the complaint to conform to the proof, pleading *quantum meruit.*

In addition to the declared liability for attorney and architect fees, judgment was rendered for $1,875 as the reasonable value of services performed by Norman I. Fadel in preparation for the building of the plant.

It is contended in appellants' brief that the court erred in holding defendants liable for the reasonable value of services rendered in preparing to construct the packing house for the reason that "An illegal contract can not be made the basis of recovery of the reasonable value of services," and that "substantially all of the services performed by plaintiff were performed in preparing to carry out an illegal contract." Appellants' contention of illegality is based upon regulations of the War Production Board, in force in 1945, when the contract was to be performed; section 1075.1 Conservation Order L-41, prohibiting "construction" without authorization and necessary priorities. In the instant case, the War Production Board did authorize construction of the packing house on August 27, 1945, but refused to grant a priority for materials.

"Construction" within the meaning of the above order is defined in subdivision (b) therein as "putting up, altering, remodeling, rehabilitating, reconstructing or repairing any structure such as a building, road, bridge, dam, sewer or the like." This prohibition, according to subdivision (c) "applies to a person who does his own construction work, to a person who gets a contractor to do it for him and to any contractor, subcontractor, architect, or engineer who works on the job or gets others to work on it or to supply materials for it. No person shall accept an order for, sell, deliver or cause to be delivered material which he knows or has reason to believe will be used in violation of the terms of this order." The respondent's brief also calls attention to the fact that among the exceptions to the above prohibition is section 1075.1(e) (9) specifying "Grading, ditch-digging or similar earth-moving operations, if no lumber or other building materials are permanently installed, except drainage pipe." It is the respondents' position that since no construction was carried on in the instant case, no illegality of contract was involved, and that nothing in the

regulations prohibits preliminary work which does not involve actual construction as above defined.

While it is undoubtedly true that an illegal contract cannot be made the basis of a cause of action, the record herein discloses nothing which indicates that the contract to construct the packing house was in any sense illegal, or that the parties thereto contemplated any improper or illegal action. According to the appellants' brief, "All or practically all of the work done by Fadel was in *preparing* to erect or construct the building." (Italics added.) Robert Fadel, son and employee of Norman I. Fadel, testified to the making of various investigations concerning building materials, the surveying of grades and elevations for the proposed building, the making of the necessary excavation, and other preliminary work, none of which included any actual construction. A survey of the war production regulations hereinbefore mentioned, fails to reveal any express or implied prohibition in reference to such preliminary work. The activity which is prohibited is "construction," expressly defined as the "putting up," etc., of a building. Moreover, in the present case, permission to construct the plant was actually granted, although without priorities, and the appellants' repudiation of the contract occurred after the granting of such authorization.

"It is the universal presumption of law," says the court in *Fites* v. *Marsh,* 171 Cal. 487, 488 [153 P. 926], "that where a contract can be performed legally, it will not be presumed that the parties intended to perform it in an illegal manner." The above statement of the rule has been quoted with approval in later cases, such as *Crawford* v. *Imperial Irrigation Dist.,* 200 Cal. 318, 324 [253 P. 726], and *Vagim* v. *Brown,* 63 Cal.App.2d 504, 510 [146 P.2d 923]. In the instant case, as respondent's brief avers, "it is apparent that the parties to this contract did not contemplate violating, nor was it necessary for them to violate, any of the provisions of Civil Code 1667 . . . or the War Production Board regulations." Section 1667 of the Civil Code provides, "That is not lawful which is: 1. Contrary to an express provision of law; 2. Contrary to the policy of express law, although not expressly prohibited; or, 3. Otherwise contrary to good morals." None of the decisions cited by appellants are factually similar to the present situation nor do they support the contentions made in appellants' brief.

█ It is further contended by appellants that the trial court erred in holding that respondent should be reimbursed in connection with the claims of the attorney Hal Hughes and the architect Peter Whitehill; that the evidence was insufficient to sustain the findings and judgment, and that the appellate court should disregard certain evidence as "inherently improbable." In this connection it may be noted that the trial court did not attempt to adjudicate the merits of the claims of the attorney and the architect, but as a matter of declaratory relief adjudged reimbursement in the event that such claims "should be established by final judgment of a competent court against the plaintiff." There appears to be no dispute over the fact that appellants had approved the respondent's employment of Attorney Hal Hughes to attempt to secure necessary priorities, and of the architect Peter Whitehill to prepare plans for the proposed building. Obviously, neither claim involved any prohibited "construction."

█ Although the appellants "are not unmindful of the rule that the weight of the evidence is for the trial court, and as a general rule an Appellate Court does not pass upon the weight or preponderance of the evidence," nevertheless it is insisted that a reversal is required because the evidence is "inherently improbable." In part this contention is based upon the assertion that although Robert Fadel claimed to have worked on the matter for many months in 1945, the witness "did not know what kind of a packing house was to be built." This witness had, however, testified that the plant was to be a combination fruit packing house. Neither in this respect or in reference to any other item of evidence, does the record reveal any inherent improbability which would justify a reversal. On the contrary, there is substantial evidence to support the findings and judgment and under the well known rule applicable in such cases, appellate interference with the decision of the trial court is not justified. There is no merit in any of the appellants' contentions.

The judgment is affirmed.

York, P. J., and White, J., concurred.

A petition for a rehearing was denied March 12, 1948, and appellants' petition for a hearing by the Supreme Court was denied April 22, 1948.